## Eliza Coppuck, Appellant, *v.* The Philadelphia, Wilmington and Baltimore Railroad Company.

*Negligence—Railroads—Grade crossings—"Stop, look and listen."*

In an action against a railroad company to recover damages for the death of plaintiff's husband, killed while driving a wagon over a grade crossing, a verdict for the defendant is properly directed where the only two persons who saw the accident were called by plaintiff and testified that the deceased drove up to the track without stopping; that when the wagon was struck it was in motion crossing the track; that the deceased was pulling the horse in an attempt to stop him, and that he could have seen the train if he had looked before going upon the track.

Argued April 4, 1899. Appeal, No. 356, Jan. T., 1898, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Sept. T.,

1896, No. 117, on verdict for defendant. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before WILLSON, J.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions in favor of defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*John M. Strong,* with him *Albert Constable,* for appellant, cited Weber v. Penna. R. Co., 76 Pa. 157; Schum v. Penna. R. Co., 107 Pa. 8; Citizens' Pass. Ry. Co. v. Foxley, 107 Pa. 537; Bradwell v. Ry. Co., 139 Pa. 431; Ely v. Ry. Co., 158 Pa. 233; R. R. Co. v. White, 38 Pa. 327; Gates v. Penna. R. Co., 154 Pa. 566; Davidson v. Lake Shore, etc., Ry. Co., 171 Pa. 522; Lerch v. Bard, 153 Pa. 572; Ellis v. Lake Shore, etc., R. R. Co., 138 Pa. 506; Penna. R. Co. v. Ogier, 35 Pa. 71.

*David W. Sellers,* for appellee.—The case is ruled by Gerety v. R. R. Co., 81 Pa. 274, and Baker v. Penna. R. Co., 182 Pa. 336.

OPINION BY MR. JUSTICE GREEN, April 24, 1899:

There are no disputed facts in this case. The only testimony taken on the trial was the testimony furnished by the plaintiff. Two persons only saw the actual collision, and both were examined. One other person testified that he saw the wagon stop at a point on the street about 100 feet from the railroad crossing but he did not see the accident. The persons who did see it were Mr. Eugene Nickerson and the lady who subsequently became his wife. Mr. Nickerson, on his examination in chief, gave the following account of what he saw: "About half past nine on Saturday evening my lady friend and I were crossing over the crossing right in front of the train, and I saw the carriage coming up Hinkson street and I said to her just as we got on the other side of the crossing on the south bound track, 'Look here,' and up Hinkson street the carriage was coming, and just as he seemed to get right on the track he kind of

pulled his horse up; it seemed he didn't know the railroad was there until he got right on the track and by that the engine struck the wagon. Q. Where were you standing when you first saw him? A. When I first saw the carriage? Q. Yes. A. Just over the track. I saw the carriage coming up before I crossed over, and I looked over the track, and said to my lady friend, 'Here comes a train,' and just as we got on the other side of the track I said, 'Look here,' and, as if he didn't know there was a railroad there, he just pulled up. . . . Q. You had got across the railroad? A. Yes, sir. We crossed in front of the train. Q. Where were you when you first saw the train? A. Just on the railroad. Q. Were you on the track? A. Just about to get on the track; just about to walk over the crossing when we saw the team. Q. Where was the team when you saw it? A. At Fourth street. Q. How far away is that from the track? A. I guess fifty yards — no hardly that far; about thirty yards, whatever distance Fourth street is at the corner of Fourth and Hinkson, coming towards the railroad when I first saw it. Then I didn't look back again until I crossed over the railroad to see if the team would stop. It seemed as if the driver did not know there was a railroad there until he got on the railroad. Q. You had your back towards the carriage? A. Yes, sir, the team was coming behind us. Q. How do you mean it seemed as if he didn't know there was any railroad there? A. He didn't slacken up any—when he was driving he did not slacken the team any until he was right on the track, and he hallooed, 'Whoa,' and the engine struck him just as he hallooed 'Whoa.' Q. Where was the train when you saw it? A. Just below the next crossing, between Morton avenue and Caldwell street, when we crossed. Q. How far away? A. About 125 or 150 yards. When we crossed over in front of the train I guess the train was about 150 yards below us." After having said there was a headlight on the train, he testified: "I was on the track when I saw the train. Q. The first track do you mean? A. Yes, sir; I was just stepping on the track and looked down the track and saw the train coming, and I said to my lady friend, 'Here comes a train.' Q. Then you were upon the track upon which the train was coming and you looked down and saw the train coming? A. Yes, sir." He further said he could see the train from where he stood just about half a mile distant.

Mrs. Nickerson was also examined. On her examination in chief she was asked: "Q. You saw the accident? A. I saw the accident. Q. Where were you? A. I was on the last track going off the railroad. . . . Q. Did you see the engine when it struck the carriage? A. Yes, sir. Q. How long had you seen it before it struck the carriage? About where was the engine when you first saw it? A. When I first saw it, it seemed to me between the two crossings. Q. Just below the Hinkson street crossing? A. Yes, sir. Between the Manyunk street crossing and the next crossing." On cross-examination she was asked: "Q. You walked over and when you got to the last track after you had passed over the railroad you became conscious that some one had been hit? A. No, sir; I knew it before when I stood there; I was standing there when I saw the horse hit. Q. Standing where? A. On the last track, between the two tracks. Q. Then you had gotten over the last track as you term it and passed over the roadbed and you stood there awhile? A. I stood when I was told to look around; the horse was coming and the train was also coming, and when I looked the man was pulling on the horse, trying to stop it, I suppose, and the horse was up and that was all I saw, and then the train, and that is all I saw. Q. Then as you were told to look around you saw the man coming with the horse and wagon to the railroad? A. The horse was just on the first track of the railroad. Q. Where was the locomotive then? A. It was about from here to that young man off the horse. Q. Then the locomotive was about twelve feet from the horse that was on this track when you saw it? A. I do not know whether it was twelve feet or not. It was that distance if that was twelve feet."

The foregoing is the whole of the testimony describing the actual facts of the accident. It was entirely uncontradicted. There was no other testimony on that subject. It proved conclusively that when the wagon was struck it was in motion crossing the track and the deceased was pulling the horse in an attempt to stop him. That he could have seen the train if he had looked was proved absolutely by the testimony of the two witnesses who both said they saw it some distance off as they crossed. The wagon was close behind them and just as they got off the last track it was driven upon the track immediately in front of the approaching train and was struck while in that

position. It is perfectly manifest that the driver did not look and hence did not see the train. Mrs. Nickerson said, " The horse was coming and the train was also coming, and when I looked the man was pulling on the horse trying to stop it." It is a plain case of actual presence on the track without either stopping or looking before attempting to cross, when the train was in full sight and rapidly approaching. There was no room for an inference that the driver performed his legal duty, and the fact of the immediate collision more than rebuts the possibility of such an inference. In addition to this was the positive testimony of both the plaintiff's witnesses that the wagon was in actual continuous motion directly upon the track.

The authorities which hold that in such a state of facts there can be no recovery, and that it is the duty of the court to so instruct the jury are so numerous, and so perfectly familiar, that it is not necessary to cite them in any detail. A single reference which is apposite to the present contention will suffice. In Davidson v. Railway Co., 171 Pa. 522, we said, after citing several decisions: " In all these cases the injured person was struck by a train on the instant of stepping on the track, and at a crossing where the train could have been seen for a considerable distance if the injured person had looked to see if it was approaching. We held in these cases that the presumption that the injured person did stop, look and listen was rebutted by the facts ; and that as no one possessed of the senses of sight and hearing could have looked or listened without both seeing and hearing the approaching train, which was in plain view and almost on him, there was a legal presumption that he did not stop, look and listen, but negligently stepped in front of the train which he might have seen and heard if he had tried. A similar state of facts was encountered in Myers v. The B. & O. Railroad Co., 150 Pa. 386. The injured person drove in front of a freight train moving at the rate of eight miles an hour, backward, but with the headlight on the rear car by which he was struck. The train was in full view for a third of a mile. It was in the night. The headlight must have been within eighty feet of him at the point where he should have looked, and had he looked it was impossible not to see it. He drove on the track and was instantly struck. He testified that he stopped, looked and listened as he approached the crossing and neither

saw nor heard the train. This was plainly impossible in view of all the circumstances. Res ipsa loquitur. The facts speak a language that could not be misunderstood or disregarded. We said he was guilty of contributory negligence as matter of law and could not recover." The foregoing comments dispose of every contention in the present case with this difference against the present plaintiff. In the last case the plaintiff was alive and himself testified that he did perform his legal duty; that is stopped, looked and listened before going on the track. But here there was not only no such testimony, but there was no possibility that an inference could be drawn that the legal duty had been performed. The undisputed facts absolutely precluded any such inference. It is no answer to say that there was negligence on the part of the defendant. The question is, was the deceased guilty of contributory negligence upon the undisputed facts? If he was, there can be no recovery. The learned court below was clearly right in directing a verdict for the defendant.

Judgment affirmed.